(86 App. Div. 391.)

BUTCHER v. QUINN et al.

(Supreme Court, Appellate Division, Second Department. July 24, 1903.)

1. ATTORNEY AND CLIENT—DISCHARGE—AUTHORITY OF ATTORNEY—DENIAL— ESTOPPEL.

Plaintiff, as administratrix, executed a power of attorney authorizing F. to demand and sue for all moneys belonging to the estate. There- after F. sued to recover a fund, alleged to belong to deceased, against a claimant and a bank in which the fund was deposited, and notified plaintiff of such fact. Plaintiff subsequently discharged F. as her at- torney, and employed another, who merely notified the bank not to pay the fund to any person except plaintiff. No notice of F.'s discharge was ever given to defendants, nor was any motion made in the action to remove him or substitute another attorney in his place. F. continued to prosecute the cause, in which a judgment was rendered in favor of the claimant, which the bank paid, after which plaintiff moved to vacate such judgment, on the ground that F. had no authority to prosecute the action. Held that, as against the bank, plaintiff was estopped by her conduct to question F.'s authority to continue the prosecution of the cause.

Appeal from Special Term, Kings County.

Action by Mary Butcher, as administratrix of the estate of Thomas Brady, deceased, against John Quinn and the Emigrant Industrial Savings Bank. From an order vacating a judgment entered in favor of defendant John Quinn, defendant bank appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS,. HIRSCHBERG, and HOOKER, JJ.

Richard O'Gorman, for appellant.
Bernard J. Douras, for respondent.

HIRSCHBERG, J. This action was commenced on August 21,. 1901, for the purpose of determining the title as between the plain- tiff, in her representative capacity, and the defendant John Quinn, to a deposit in the bank of the appellant. The case was tried at

Brooklyn on December 20, 1901, and resulted in a judgment, entered January 8, 1902, decreeing the ownership in Quinn, to whom the bank duly paid the fund, in accordance with the requirements of the judgment, on January 11, 1902. The order appealed from, granted on the plaintiff's motion, vacates this judgment on the ground that the attorney who represented her, viz., Mr. Edwin B. Fiske, began and continued the action without authority. After a careful examination of the very voluminous testimony taken before a referee upon the hearing of the motion, I have reached the conclusion that the order is unjust to the appellant, and that the plaintiff's conduct has been such as to bind her by the result of the trial after that result had been duly acquiesced in by the appellant in good faith.

There is no dispute but that Mr. Fiske was duly authorized to begin the action. Such authority was conferred by writing dated July 27, 1901, duly acknowledged, signed by the plaintiff and the next of kin of her decedent, expressly retaining and employing the attorney to ask, demand, and sue for all moneys belonging to the estate, due to them or any of them. This authority was conferred in contemplation of this suit, the plaintiff having previously endeavored to make a demand of Quinn for the possession of the bankbook, as a preliminary to the commencement of the action, under the attorney's advice. He was, however, discharged by her on the night of August 21, 1901, which discharge was valid as between them, notwithstanding the fact that his services had not been paid for; but the plaintiff, with full knowledge that this action had then been commenced by him, voluntarily elected to permit it to proceed to trial and to judgment without notifying the defendants, or either of them, that she had discharged her attorney, or that he was prosecuting the suit against her will. By advice of new counsel, she decided to take the chances of the issue of the suit before publicly repudiating the authority of the attorney by whom it was conducted, and it would be inequitable to compel the appellant to incur the risk of a second payment after having once discharged its liability under a judgment thus procured with every appearance of regularity.

The action was commenced on the afternoon of August 21st. Very likely it was commenced by the attorney hurriedly, in anticipation of his discharge, but the question under consideration has no relation to his rights, but relates solely to the rights of the innocent appellant. The attorney claims that he told the plaintiff, on the night of his discharge, that the action had been commenced. This she denies, and asserts positively that she never knew that the action had been commenced until she received a letter from Fiske dated November 25, 1901, to which further reference will be made. In this she is clearly mistaken, for as early as August 30, 1901, she received a letter from him, in which he distinctly told her that the action had been commenced, as he had told her, "last Wednesday, a week ago," viz., August 21st. She replied to this letter under date of August 31st, expressing surprise at its contents, denying that the action had been commenced on August 21st, but not denying the statement that he had told her so when he was discharged. This letter was drafted by her new attorney, Mr. R. A. Morrison.

A number of letters were written by Mr. Fiske to the plaintiff, about the suit, prior to the trial. He wrote her on November 25th, as follows:

"Your suit with Mr. Quinn has been noticed for trial by both parties, and in all probability will be placed on the preferred calendar for the December Equity Term, which meets on the first Monday of December next. I should like to consult with you in regard to the same. Quinn is quite confident that he will succeed, but I do not think he will. He certainly will not if we can get our witnesses. I hope you will come and see me so that we may be ready to meet them at the trial. This action was commenced on the 21st day of August."

On the 29th day of November he wrote to her again in reference to the case, urging her, among other things, not to let the matter go by default; but no notice was taken of these or any of the other letters, nor was any answered, excepting that of November 29th, which was answered by Mr. Morrison, in the plaintiff's name, six days after the trial. The case was placed on the day calendar on the second day of the December Term, and remained there until it was tried. Mr. Morrison, as well as the plaintiff, knew that it was on the day calendar and about to be tried, but for some unexplained reason allowed no hint to escape to the appellant, or to its counsel, of the severed relations of the plaintiff and her attorney. It may be added that Mr. Morrison was possibly influenced in the course of conduct adopted by the belief that the action was wholly unauthorized, inasmuch as the plaintiff denied to him, when questioned upon the subject, that she had executed the written authority dated July 27, 1901. Be this as it may, it is undisputed that the only communication addressed to the appellant was one dated August 26, 1901, signed by Morrison, in which, as attorney for the plaintiff as administratrix, he notified the president of the bank not to pay the money on deposit to any one other than her. But that in the action pending there was any question or dispute, on the plaintiff's part, of the authority of Mr. Fiske to conduct the same, the utmost care in concealment of the fact appears to have been studiously and successfully taken during the four months intervening his discharge and the trial.

There is no suggestion in the record that the case was not fully and fairly tried or properly decided. There is no claim that any different result will be reached on a new trial, that Quinn has not a good title to the money in question, or that there is any witness who can testify to anything on the merits in the plaintiff's behalf.

The rule of law applicable to the situation is summarized from the authorities in the Encyclopædia of Pleading and Practice (volume 2, p. 685), as follows:

"Taking some early English cases as their guide, they hold that an appearance by attorney, whether for the plaintiff or the defendant, if there be no collusion, may be recognized by the adverse party as authentic and valid; that, when an attorney takes upon himself to appear, the court, in case of a domestic judgment, looks no further, but proceeds as if the attorney had sufficient authority, and leaves the party to his action against such attorney, if he is financially responsible."

In Denton v. Noyes, 6 Johns. 297, 5 Am. Dec. 237, it was held that a judgment confessed by an attorney without authority was regular

and valid, and that the appearance, although without warrant, was good as to the court. In Hamilton v. Wright, 37 N. Y. 502, it was further held that the law warrants a party in giving faith and confidence to an attorney, who by law is authorized to hold himself out as a public officer, clothed with authority to represent others in the courts; that, where an attorney appears for a party, the general rule is that a retainer will be presumed, and that the adverse party, having no notice to the contrary, may act upon such presumption. In Donohue v. Hungerford (1 App. Div. 528, 37 N. Y. Supp. 628) the plaintiff had consulted an attorney in respect to the bringing of an action for libel, but before the summons was served revoked his authority. The complaint was served by him, and the action placed at issue, and it was held that the pendency of the action was a good defense to one subsequently instituted by her through another attorney. The court said (page 530, 1 App. Div., page 630, 37 N. Y. Supp.):

"So, in the case at bar, the defendants had a right to rely upon the pendency of the action in the Superior Court, and, if the plaintiff desired to relieve herself because of the alleged unauthorized commencement of that action, she was bound to move in the Superior Court, and there obtain relief. The plaintiff knew of the commencement of the action in the Superior Court upon the day after it had begun, and that a complaint would be served, and she took no steps whatever to set aside this alleged unauthorized action of the attorney. The defendants were required to answer in that action, or a judgment would have been taken against them by default. It was not for them to challenge the authority of the attorney. An attorney is an officer of the court, and is presumed to act with authority; and a litigant who knows of an unauthorized action on the part of an attorney claiming to act for him is bound to see that he is relieved from the presumptions which necessarily arise from the bringing of an action by an attorney."

And in Abbott v. Blohm, 54 App. Div. 422, 66 N. Y. Supp. 838, the court, in refusing to set aside a judgment which had been obtained upon an unauthorized appearance by attorney, said (page 426, 54 App. Div., page 841, 66 N. Y. Supp.):

"Where it is shown that the appearance of the attorney is unauthorized, the court undoubtedly has power in its discretion to vacate the appearance and set aside the judgment; but it is only proper to exercise that authority where the application has been made promptly or the other party has lost no rights by the delay."

The bank in this case had no pecuniary interests in the controversy between the plaintiff and Quinn. Its only concern was to pay over the money under judicial authority to the successful claimant, and to be protected against any further demand. No circumstance occurred to cast a doubt upon the assumed authority of Fiske, or to disturb the presumption of authority in his favor. There was no motion to remove him, or for the substitution of another attorney in his place. The receipt of the notice not to pay to any one other than the plaintiff, although signed by a different attorney than the one in charge of the litigation on the record, was not in itself calculated to excite suspicion as to the authority of the latter, especially in the absence of any notification of the lack of such authority. The prompt payment of the money in accordance with the terms of the judgment has not been shown to have been collusive or in any

respect in bad faith.   To uphold the order appealed from may result in possible loss to the appellant, which the slightest care and prudence on the part of the plaintiff in openly repudiating the alleged unauthorized acts of Fiske would have easily avoided.

Having intentionally permitted the suit to proceed to judgment, and the mandate of the judgment to be carried out, without any intimation to the other parties of the objections or her dissatisfaction, the plaintiff has lost the right to now obtain redress at their expense, and the order should accordingly be reversed, and the judgment reinstated.

Order reversed, with $10 costs and disbursements, and judgment reinstated. All concur.